1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID P.,<br><br>                                          Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>                                          Defendant. | Case No.:  3:19-cv-01506-BEN-AHG<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 22, 24]** |

This matter comes before the Court for a Report and Recommendation ("R&R") on the parties' cross-motions for summary judgment (ECF Nos. 22, 24) regarding Plaintiff's appeal of the final decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. Plaintiff brings his appeal pursuant to 42 U.S.C. § 405(g).

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned recommends that the Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 22), **GRANT** Defendant's Cross-Motion for Summary Judgment (ECF No. 24), and **AFFIRM** the Commissioner's denial of disability insurance benefits.

## I.    **PROCEDURAL BACKGROUND**

On October 26, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging

1

disability beginning October 19, 2015. *See* Certified Administrative Record ("AR") 565, ECF No. 14-11. Plaintiff's application was initially denied on January 20, 2016, and denied again upon reconsideration on April 27, 2016. AR 1725-1759. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on June 8, 2016, and the hearing was held before the ALJ on January 30, 2018. AR 1781-83, 1695-1724.

On May 9, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled as defined by the Social Security Act, and accordingly denying disability insurance benefits. AR 565-579. The Appeals Council affirmed the ALJ's decision on June 11, 2019, (AR 24-27), making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h). On August 12, 2019, Plaintiff timely commenced the instant appeal seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

## II.   SUMMARY OF ALJ'S FINDINGS

As an initial matter, the ALJ noted that Plaintiff had previously filed a disability application that had been addressed in a prior ALJ's opinion. AR 565. Thus, the holding in *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1998) applied to Plaintiff's new claim. In *Chavez*, the Ninth Circuit held that a prior ALJ's findings concerning a claimant's residual functional capacity are entitled to some *res judicata* consideration in subsequent proceedings. *Id.* at 693. "[I]n order to overcome the presumption of continuing nondisability arising from the first [ALJ's] findings of nondisability," the claimant "must prove 'changed circumstances' indicating a greater disability." *Id.* (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985)). In this case, the ALJ found that Plaintiff rebutted the presumption by showing a "changed circumstance" of new impairments not previously considered. AR at 565-566. Therefore, the ALJ proceeded with his analysis without applying a presumption of continuing nondisability.

The ALJ first determined Plaintiff met the insured status requirements of the Social Security Act through March 31, 2017. AR 566. Accordingly, the relevant period for the disability analysis is the alleged disability onset date of October 19, 2015 through the date

last insured of March 31, 2017. Thereafter, the ALJ performed the required five-step sequential evaluation process governing DIB claims under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments; (4) whether the claimant can still perform his past relevant work given his residual functional capacity despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are addressed in order, but the ALJ is not always required to go through all five steps of the process. Specifically, an affirmative answer at steps one or four (whether the claimant is currently engaged in substantial gainful activity or can perform past relative work), or a negative answer at step two (whether the claimant has an impairment or combination of impairments that is severe), would immediately lead to a finding of non-disability, and the analysis would stop there. Conversely, an affirmative answer at step three (whether the claimant's impairments meet a listing) would immediately lead to a finding of disability, also ending the analysis. *Id. See also Garfield v. Schweiker*, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

At step one of the five-step process, the ALJ determined that Plaintiff did not engage in substantial gainful activity ("SGA") from his alleged disability onset date of October 19, 2015 through the date last insured of March 31, 2017. AR 568. *See also* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 404.1572(b).

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). A "severe" impairment is one that significantly limits physical or mental ability to do basic work activities. *Id.* The ALJ concluded the Plaintiff had the following "severe"

3:19-cv-01506-BEN-AHG

impairments: mild degenerative disc disease at L3-4 with left foraminal disc protrusion at L3-4, a history of right knee anterior cruciate ligament (ACL) repair, and a history of meniscus tear and ACL repair of the left knee. AR 568.

At step three, the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). The listings describe impairments that the Social Security Agency ("SSA") considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). If a claimant's impairments meet or medically equal any of the listings, the ALJ will find the claimant disabled. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings. AR 569.

Before considering whether Plaintiff could perform past relevant work at step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is ". . . the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). A claimant's RFC is based on all relevant evidence in the case record. *Id.*

Based on his evaluation of the medical and opinion evidence in the record, the ALJ determined that, through the date last insured, Plaintiff had the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a). However, he would require a walking stick for ambulation." AR 570. Sedentary work is defined under the regulations as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in

carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

In reaching this conclusion, the ALJ considered all symptoms of Plaintiff's medically determinable impairments "and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (providing guidance on how the Agency evaluates statements regarding the intensity, persistence,  and limiting effects of symptoms in disability claims). AR 570. Upon consideration, the ALJ enumerated seven "specific and legitimate reasons" for his finding that, "to the extent it is alleged that [Plaintiff] cannot perform work at the [RFC] recited above, . . . those allegations are not totally consistent with the evidence[.]" AR 575. The ALJ further found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 575-576.

The ALJ's seven enumerated reasons are as follows: First, the ALJ noted that Plaintiff had been prescribed the psychotropic medications Amitriptyline and Xanax on one occasion in July 2016, but that Plaintiff had never received any mental health services. (Although the absence of any mental limitations in the RFC is not at issue on appeal, the Court presumes that the ALJ included this reason to explain that absence.) Second, the ALJ stated that on November 20, 2015, when Plaintiff was seen at the Girard Orthopedic Surgeons medical group, "he reported that his back pain was the same as it had been for years and it was his right knee pain that was most painful." Thus, the ALJ concluded that Plaintiff's back pain was not preventing him from working. AR 575. Third, the ALJ cited to treatment notes from the same November 20, 2015 visit, indicating that Plaintiff stated he was disabled due to pain throughout his body, and repeatedly requested that the treatment providers "document reason for his disability." The ALJ took from these records

5

that Plaintiff was seemingly "more concerned about wanting [the providers] to help him secure disability benefits, than relieving his pain." AR 575.

Fourth, the ALJ detailed evidence showing that Plaintiff was "exhibiting drug-seeking behaviors." Specifically, the ALJ cited to records showing that Plaintiff asked for narcotic pain medications during his November 20, 2015 visit, called the orthopedist's office on numerous occasions requesting narcotic pain medications—although they explained that they did not prescribe narcotics to non-surgical patients—and falsely reported to the Pomerado Hospital emergency room on October 30, 2015 that his orthopedist's office had prescribed him the narcotic medication Tramadol despite the notes showing that such a prescription would contravene office policy. AR 575. Additionally, the ALJ noted that Plaintiff reported to his orthopedist's office that he had been dismissed from his previous primary care physician's office due to his constant "pushing" for certain treatments and medications, and that he obtained addiction pamphlets that he was encouraged to read. AR 575. Fifth, the ALJ cited to the same November 20, 2015 evaluation as showing that Plaintiff refused to participate in physical therapy due to "seeing no purpose in this treatment." Nonetheless, the ALJ acknowledged that Plaintiff did later participate in physical therapy from August 1, 2016 through September 14, 2017, and was noted as "progressing with the program as expected." AR 576. Agency regulations require claimants to follow prescribed treatment in order to qualify for benefits. 20 C.F.R. § 404.1530 (quoted by the ALJ at AR 576).

Sixth, the ALJ noted that when discussing Plaintiff's impairments, no physicians ever opined that listing-level limitations were met or equaled. AR 576. Seventh, the ALJ concluded broadly that "the objective evidence of the claimant's medical record does not establish impairments likely to produce disabling pain or other limitations as alleged for any period of 12 or more continuous months." AR 576.

In making his RFC determination, the ALJ also considered opinion evidence in accordance with 20 C.F.R. § 404.1527, although the only medical opinions in the record relating to the relevant period were provided by the State Agency medical consultants D.

6

Pong, M.D. and K. Vu, D.O., who evaluated Plaintiff's application at the initial and reconsideration levels, respectively. *See* AR 576, 1725-1759. The ALJ granted "partial weight" to their opinions on the basis that they were "generally consistent with the evidence as a whole[,]" but discounted them to the extent that the ALJ found Plaintiff "slightly more limited" than reflected by Dr. Pong's and Dr. Vu's RFC assessments. AR 576. Specifically, both agency consultants found Plaintiff could perform light work with postural limitations of occasional climbing, balancing, stopping, kneeling, crouching, and crawling. In contrast, the ALJ found Plaintiff's RFC limited him to only sedentary work. AR 576.

At step four, the ALJ had to determine whether, given his RFC, Plaintiff could perform his relevant past work. *See* 20 C.F.R. § 404.1520(f); AR 577. Plaintiff's past relevant work included the occupations of (1) Supervisor, Auto-Body Repair, (2) Counter Clerk, Auto Parts, (3) Manager, Administrative Services/Office Worker, and (4) Manager, Auto Services. AR 577. Based on the testimony of the vocational expert ("VE") at the January 30, 2018 hearing on Plaintiff's application, the ALJ found that Plaintiff's RFC would make him unable to perform the Supervisor or Counter Clerk jobs, but able to perform the Manager, Administrative Services/Office Worker and Manager, Auto Services jobs. AR 577; *see also* AR 1717-1718, 1720 (testimony of the vocational expert that the Supervisor and Counter Clerk jobs are classified as light work, and that someone with an RFC limiting him to sedentary work with use of a cane could only perform the sedentary Manager jobs). Based on this conclusion, the ALJ found Plaintiff not disabled. AR 577.

Having concluded at step four that Plaintiff was not disabled, the ALJ was free to halt his analysis at that point. However, the ALJ proceeded to step five, where the burden shifts to the ALJ to show that Plaintiff can perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). Here, based on the VE testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including the jobs of document preparer and ticket counter. AR 578. Consequently, the ALJ also found Plaintiff not disabled at step five.

### III.   <u>STANDARD OF REVIEW</u>

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied, and, if so, the Court must affirm the Commissioner's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

\\

\\

### IV.    **PARTIES' POSITIONS**

Plaintiff raises two grounds for reversal in his Motion for Summary Judgment: (1) that the ALJ's RFC determination is not supported by substantial evidence; and (2) that the ALJ was unconstitutionally appointed, and Plaintiff's case should thus be remanded for a new hearing with a different and constitutionally appointed ALJ.

Turning to the first argument, Plaintiff notes that the ALJ afforded only "partial weight" to the non-examining state agency consulting physicians' opinions, which were the only medical opinions in the record. ECF No. 22-1 at 18. Specifically, as discussed above, the ALJ found that the medical evidence supported assigning Plaintiff an RFC that was even *more* limited than the RFC determinations of the consulting physicians. AR 576. Despite giving only partial weight to those determinations and finding greater restrictions warranted, the ALJ did not order a consultative examination of Plaintiff or the testimony of a medical expert, instead relying on the record as a whole to reach his conclusion. Plaintiff contends that was error. ECF No. 22-1 at 18.

Plaintiff notes in particular that the consultative physicians' opinions were from January and April 2016, approximately two years prior to the date of the ALJ's opinion. *Id.* at 19; *see also* AR 579, 1725-1759. Therefore, there is no medical opinion in the record that takes into account the two years of medical evidence post-dating those opinions, even though Plaintiff "underwent surgery for his right knee impairment and did not develop his left knee impairment until after the state agency consultants completed their determinations[.]" ECF No. 22-1 at 19-20. Plaintiff argues that the medical evidence post-dating the state agency physicians' opinions "does not lend itself to common sense interpretation[,]" and the consultants did not have the opportunity to review the later evidence relating to Plaintiff's right-knee surgery and the worsening of Plaintiff's left-knee impairment. *Id.* at 20-21. Accordingly, Plaintiff asserts that the ALJ's failure to develop the record further by ordering a consultative examination or medical expert testimony amounted to reversible error, because the ALJ is not qualified "to interpret the raw medical data into functional limitations[,]" and "[w]ithout any updated opinion evidence, the ALJ

9

was left to rely on his own lay person opinion regarding the evidence of impairments that were not reviewed by the state agency medical consultants." *Id.* at 19, 23. Plaintiff cites to various cases for the proposition that "if an opinion is stale, the ALJ should obtain a medical opinion that could interpret Plaintiff's most recent raw medical data into functional limitations" and that remand is warranted if the ALJ "bases [a] claimant's RFC entirely on the stale opinions of non-examining physicians." *Id.* at 19 (citing *Rodriguez-Curtis v. Astrue*, No. CV 10-02794-VBK, 2011 WL 536598, at *3 (C.D. Cal. Feb. 15, 2011); *Arriaga v. Berryhill*, No. CV-16-0755-TUC-LCK, 2018 WL 1466234, at *6 (D. Ariz. Mar. 26, 2018); and *Huerta v. Astrue*, No. 13-CV-01210-WHO, 2014 WL 1866427, at *16 (N.D. Cal. May 8, 2014)).

Plaintiff further argues the error was harmful, because Plaintiff's own RFC assessment of himself (AR 2321-2332) opined that Plaintiff had significant physical limitations which, if incorporated into the ALJ's RFC determination, would have precluded Plaintiff from performing even sedentary work. ECF No. 22-1 at 22.

Second, Plaintiff argues that the ALJ who decided Plaintiff's case was unconstitutionally appointed, relying on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In *Lucia*, the Supreme Court held that ALJs for the Securities and Exchange Commission ("SEC") are "Officers of the United States" within the meaning of the Constitution; thus, an ALJ appointed by SEC staff members was unconstitutionally appointed pursuant to the Appointments Clause, which provides that only the President, a court of law, or the head of a department may appoint an inferior officer. *Id.* at 2051-55; U.S. Const. art. II, § 2, cl. 2. Although *Lucia* did not involve the appointment of ALJs within the Social Security Administration ("SSA"), the Acting Commissioner of the SSA nonetheless responded to the ruling on July 16, 2018, by ratifying the appointments of ALJs and administrative appeals judges as her own in order to address any Appointments Clause concerns involving SSA claims. *See* ECF No. 22-1 at 23 (citing to Emergency Message EM-18003 REV 2, *available at* https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM). However, the ALJ in this case issued his opinion on May 9, 2018, prior to the June 21,

2018 *Lucia* decision and the July 16, 2018 retroactive ratification of his appointment by the SSA's Acting Commissioner. Accordingly, Plaintiff argues the only remedy for the decision having been rendered by an unconstitutionally appointed ALJ is to remand the case for a new hearing in front of a different and constitutionally appointed ALJ, as the Court ordered in *Lucia*. ECF No. 22-1 at 23-24, 27. *See also Lucia*, 138 S. Ct. at 2055.

In its cross-motion and response to Plaintiff's motion, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. Defendant specifically contends that the state agency physicians' opinions constitute substantial evidence, and that Ninth Circuit precedent permits the opinions of non-examining physicians to serve as substantial evidence if they are consistent with independent clinical findings or other evidence in the record. ECF No. 24 at 7-8 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Although the ALJ did not fully credit their opinions, Defendant argues the ALJ is not required to agree with everything in the opinions for them to qualify as substantial evidence. ECF No. 24 at 8 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). Further, Defendant refutes Plaintiff's position that the opinions were "stale" simply because the consultative physicians did not review all of the evidence in the record, arguing that the ALJ "may rely on relevant medical opinions that are consistent with the evidence, no matter when those opinions were issued." ECF No. 24 at 8-9.

Additionally, Defendant asserts that in spite of Plaintiff's claim that there is evidence that his impairments worsened after the state agency physicians issued their opinions, Plaintiff does not point to any evidence to show he was incapable of performing sedentary work with a walking stick, as the ALJ found in his RFC determination. *Id.* at 9. Defendant contends that Plaintiff's testimony about his physical capabilities, as well as medical records from Plaintiff's physical therapy treatment from November 2016, are consistent with that RFC. *Id.* at 9-10. Defendant also argues Plaintiff "fails to point to any evidence that undermines the ALJ's finding." *Id.* at 10. Although Defendant acknowledges that Plaintiff relies on his own evaluation of his limitations, Defendant argues "the ALJ was under no obligation to rely on this unsupported statement from Plaintiff[,]" particularly

given the ALJ's finding that Plaintiff's subjective symptom testimony was unreliable for several reasons, "including Plaintiff's drug-seeking behavior, the objective medical evidence, and non-compliance with recommended treatment." *Id.* at 11-12.

As for Plaintiff's argument that the ALJ improperly interpreted "raw medical data" to craft the RFC, Defendant counters that the ALJ "properly weighed Plaintiff's largely unremarkable physical examination findings and the diagnostic reports[,]" and found that "the evidence of record as a whole did not support Plaintiff's subjective complaints" regarding the extent of his limitations. *Id.* at 11. The Commissioner notes that the RFC "is exclusively the purview of the ALJ" and "does not need to track a single medical opinion." *Id.* Defendant also refutes that procuring a consultative examination in 2018 would have aided the ALJ in determining whether Plaintiff established he was disabled prior to his date last insured of March 31, 2017. *Id.*

Turning to Plaintiff's Appointments Clause argument, Defendant asks the Court to find Plaintiff waived the Appointments Clause challenge by failing to raise the issue to the agency during the administrative process. *Id.* at 14-23. Defendant acknowledges that the Third Circuit and some other district courts have held that Social Security claimants do not need to present Appointments Clause claims during SSA administrative proceedings in order to preserve them; however, Defendant explains that "in the wake of *Lucia*, 50 out of 57 district courts have uniformly rejected Appointments Clause challenges to SSA ALJs where the plaintiff failed to raise the issue during the administrative proceedings." *Id.* at 18-19, 19 n.12 (collecting cases). *See also* ECF No. 27 (Notice of Supplemental Authority submitted by Defendant on June 30, 2020, informing the Court of the Tenth Circuit's recent unanimous decision holding that Social Security claimants forfeit Appointments Clause challenges by failing to raise such claims before the agency) (discussing *Carr v. Commissioner, SSA*, 961 F.3d 1267 (10th Cir. 2020)).[1]

---

[1] The plaintiff in *Carr* has filed a petition for a writ of certiorari with the Supreme Court.

For the reasons discussed below, the undersigned finds that the ALJ did not commit reversible error, and that Ninth Circuit precedent compels a conclusion that Plaintiff waived his Appointments Clause argument by failing to raise it during the administrative proceedings. Accordingly, the undersigned recommends that the Court affirm the Commissioner's decision.

## V.   DISCUSSION

### A. The ALJ's RFC determination is supported by substantial evidence

The opinions of the non-treating state agency consulting physicians, coupled with the medical evidence of record, constitute substantial evidence supporting the ALJ's RFC determination. Acceptable medical sources include non-treating consultative examiners for the Social Security Administration. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *1 n.1 (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1502, 404.1513a, and 404.1527. Therefore, the opinions of Dr. Pong and Dr. Vu are considered medical opinions under the regulations and, as such, can constitute substantial evidence to support the RFC determination if they are "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957 (9th Cir. 2002). Since the ALJ found their opinions to be "generally consistent with the evidence as a whole" and elsewhere explained the record evidence supporting his RFC determination, the ALJ met this standard. AR 576. This conclusion stands despite the ALJ's finding that Plaintiff was "slightly more limited" than Dr. Pong and Dr. Vu opined. *Donna M. v. Saul*, No. ED CV 18-2554-SP, 2020 WL 1550212, at *5 (C.D. Cal. Mar. 31, 2020) ("An ALJ must consider opinions from medical sources, but is not required to adopt verbatim a medical opinion because the RFC determination is ultimately reserved to the Commissioner").

In arguing that the ALJ erred by including additional functional limitations in Plaintiff's RFC beyond those recommended by the consultative examiners, Plaintiff cites to *Padilla v. Astrue* for the proposition that "as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" 541 F. Supp. 2d 1102, 1106 (C.D. Cal 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) and citing *Day v.*

*Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). Plaintiff takes this proposition out of context. *Padilla* concerns whether an ALJ is qualified ***at step two*** of the sequential evaluation process to determine whether a claimant lacks a medically severe impairment or combination of impairments. Such a finding at step two must be "clearly established by medical evidence." *Padilla*, 541 F. Supp. 2d at 1106 (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). The *Padilla* court found that the ALJ's finding that the claimant did not have a severe impairment or combination of impairments at step two was not "clearly established by medical evidence," because the ALJ relied on an inconsistent and ambiguous medical opinion in reaching that conclusion, and the ALJ's duty to further develop the record is triggered in the face of ambiguous evidence.

Although Plaintiff does not point to "ambiguous evidence," he argues that the consulting physicians' opinions were "stale," triggering the ALJ's duty to further develop the record. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. . . . Ambiguous evidence, ***or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence***, triggers the ALJ's duty to conduct an appropriate inquiry") (emphasis added) (internal quotations and citations omitted). In making this argument, as noted above, Plaintiff relies on three opinions: *Rodriguez-Curtis*, *Arriaga*, and *Huerta*. None of these opinions is apposite here.

First, in *Rodriguez-Curtis*, the ALJ discounted a treating physician's opinion because it was over four years old. 2011 WL 536598, at *3. On review, the district court held that this was not a specific and legitimate reason to reject the opinion, explaining that the ALJ should have developed the record by ordering another consultative examination ***if*** he felt the opinion was stale, rather than rejecting it due to its age. *Id.* If anything, this ruling cuts against Plaintiff's argument in the present case, since the *Rodriguez-Curtis* court found that the fact an opinion is four years old is insufficient reason to discount its weight. Moreover, the ALJ in the present case never opined that the consulting physicians'

opinions were stale—rather, that is merely Plaintiff's position on appeal. The ALJ's only reason for giving Dr. Pong's and Dr. Vu's opinions "partial weight" was that the ALJ found Plaintiff "to be slightly more limited than that assessed by State Agency medical consultants," but also found their opinions "generally consistent with the evidence as a whole." AR 576. Nowhere did the ALJ express that the age of the opinions affected his determination of their weight.

Second, Plaintiff relies on *Arriaga* for the proposition that remand is warranted where an ALJ relies exclusively on the stale opinion of a non-examining consultant. ECF No. 22-1 at 19. Plaintiff also cites to the *Arriaga* court's suggestion that the ALJ may need to obtain a current functional review by a consulting examiner on remand. *Id.* The undersigned finds *Arriaga* clearly distinguishable. There, the district court held that the ALJ erred by rejecting the opinions of the treating physician without a germane reason, for failing to give any reason for rejecting the opinion of the examining psychologist, and for discounting the plaintiff's credibility without clear and convincing reasons. 2018 WL 1466234, at *6. Based on these errors, the court ruled that the case should be remanded. However, the *Arriaga* court expressly did not rule on whether the ALJ erred by not further developing the record and obtaining the testimony of a vocational expert. *See id.* ("Because the Court is remanding the matter for further development, it need not rule on Arriaga's claim that the ALJ erred in not further developing the record and obtaining the testimony of a vocational expert"). Further, the *Arriaga* court's criticism of the ALJ's use of "stale opinions of non-examining physicians" is stated ***only in contrast to the rejected opinion of the psychiatric nurse practitioner who had examined the plaintiff more recently***. *Id.* To Plaintiff's point, the court only states that, on remand, the ALJ "may need to obtain a current functional review by a consulting examiner," rather than finding that error lay in not having done so already.

Third, Plaintiff also relies on *Huerta* for the same proposition for which he cited *Arriaga*—that an ALJ may not rely exclusively on a "stale" opinion of a non-examining physician to reach an RFC determination. *Huerta* is also clearly distinguishable. Again,

unlike the present case, *Huerta* deals with whether an ALJ errs by relying on an earlier non-examining consultant's opinion **to rebut the conclusions in a treating physician's most recent report**. *See* 2014 WL 1866427, at *15. In finding that the ALJ committed reversible error, the *Huerta* court relied on Ninth Circuit precedent specific to the propriety of rejecting more recent opinions of ***treating physicians*** in favor of older medical evaluations. *See id.* (quoting *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative") and *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) ("Because [claimant's] condition was progressively deteriorating, the most recent medical report is the most probative. Earlier medical evaluations, based on [claimant's] condition several months before, do not constitute substantial evidence to rebut the conclusions contained in" treating physician's most recent report")) (alterations in original). Moreover, this discussion in *Huerta* does not concern the key error that the court ultimately relied on to remand the case—namely, the *Huerta* court found that the ALJ erred by failing to explain why she rejected the consulting physician's opinion from one period of time, but afforded the opinion "great weight" for the period of time thereafter. 2014 WL 1866427, at *15.

In contrast, here, the ALJ did not rely on stale opinions of consultative examiners to rebut a treating physician's opinion to the contrary—indeed, there is no opinion to the contrary in the record. None of the cases cited by Plaintiff supports his assertion that "courts will remand where the ALJ bases [a] claimant's RFC entirely on the stale opinions of non-examining physicians." ECF No. 22-1 at 19. This is, at best, a misleading description of the holdings in *Arriaga* and *Huerta*, which both deal with the propriety of relying on older consultative examiners' opinions to reject the more recent opinions of treating sources. Both opinions rely in part on rules and regulations specifically concerning an ALJ's evaluation of the opinion of a treating source, which are ordinarily entitled to controlling weight. They are thus inapposite here, where the opinions of the consultative examiners are not rebutted by any other medical opinion, let alone that of a treating source.

Most importantly, the ALJ here did not determine that any evidence was ambiguous,

16

and Plaintiff points to none. Nor did the ALJ find the record inadequate to allow for proper evaluation of the evidence, which would trigger the duty to develop the record by obtaining additional evidence such as subpoenaing Plaintiff's physicians for records, submitting questions to his physicians, continuing the hearing, or keeping the record open to allow supplementation. *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) and *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). And although the ALJ has a duty to "fully and fairly develop the record[,]" *Tonapetyan*, 242 F.3d at 1150, Plaintiff bears the burden of establishing disability. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), *as amended* (Jan. 26, 1999). The SSA fully developed the record by requesting records from Plaintiff's numerous providers. The Administrative Record is over 3,000 pages, and includes medical treatment records from over 30 different providers and medical facilities between 2005 and 2018 (although the majority of records reflect treatment from the relevant period of October 19, 2015 - March 31, 2017).

Further, the fact that the consulting physicians did not have the benefit of reviewing the entire record, because their opinions were submitted in 2016, is no reason to diminish the value or weight of their opinions as evidence in support of the RFC determination. Another district court in this circuit recently addressed the same argument and soundly rejected it:

> Plaintiff first contends that the opinions of the state agency consultants . . . do not rise to the level of substantial evidence to support the ALJ's RFC assessment because neither doctor could review the significant evidence in the record that came into existence after they gave their opinions in mid-2015. Plaintiff is incorrect. "Reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Andrews* [*v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995)]. Indeed, "[t]he analysis and opinion of an expert selected by the ALJ may be helpful to the ALJ's adjudication." *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). **Consultative examiners, who evaluate a claimant's condition during the initial phases of the benefits application process, will never have all of the evidence available to the ALJ, whose decision is rendered often years later, at which point the claimant will have amassed additional evidence of his alleged disability**. That does not diminish the value of their opinions, especially where, as here,

3:19-cv-01506-BEN-AHG

the examiners reviewed the available evidence predating their opinions, and the ALJ considered other doctors' opinions and the trove of objective record evidence of Plaintiff's conditions.

*Jose Z. v. Saul*, No. EDCV 18-2476-KS, 2020 WL 434259, at *8 (C.D. Cal. Jan. 28, 2020) (emphasis added) (internal record citations omitted). The undersigned recommends that the Court adopt the same reasoning here. If Plaintiff's argument were credited, ***all*** opinions of consulting physicians at the initial and reconsideration levels would be "stale," and thus the ALJ would always be required to discount their weight—at least partially—for that reason alone. Such a conclusion is entirely unsupported by case law or the governing regulations.

Contrary to Plaintiff's argument that the ALJ's review of the medical evidence as a whole constituted an impermissible interpretation of "raw medical data" by a lay person, in determining the RFC, the ALJ is permitted to rely on medical evidence that has not been formally interpreted by a physician in a medical opinion. SSA regulations regarding the RFC determination provide:

> We will assess your residual functional capacity **based on all of the relevant medical and other evidence**. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. § 404.1545(a)(3) (internal citations omitted) (emphasis added). *See also* SSR 16-3p, 2017 WL 5180304, at *12 ("We consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record"); *Day*, 522 F.2d at 1156 (explaining that "[d]isability may be proved by medically-acceptable clinical diagnoses, as

18

well as by objective laboratory findings" and that an ALJ may also consider a claimant's "general appearance" and "testimony at the hearing"). Therefore, the ALJ is not only permitted but required to consider the "raw medical data" of medical records when crafting a claimant's RFC.

An RFC assessment is not a medical opinion, and indeed, determining the RFC is within the *exclusive province* of the ALJ. *See* 20 C.F.R. § 404.1527(d)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., *the final responsibility for deciding these issues is reserved to the Commissioner*") (emphasis added); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"); *Henson v. Astrew*, No. 15-CV-03205-NJV, 2016 WL 4916923, at *3 (N.D. Cal. Sept. 15, 2016) ("Determination of a claimant's RFC is a legal decision which is expressly reserved to the Commissioner through her delegate, the ALJ."). Consequently, the undersigned recommends the Court reject Plaintiff's argument that the RFC is not supported by substantial evidence merely because the ALJ incorporated greater limitations into the RFC than those recommended by the state agency physicians.

Significantly, despite the voluminous record and Plaintiff's extensive history of treatment of his impairments, none of Plaintiff's providers submitted a medical opinion to support his claim of disability. And, as discussed by the ALJ, this was not for lack of trying. The records reflect that Plaintiff asked his orthopedist's office to "document reason for his disability multiple times, along with asking for narcotic pain medication." AR 2339. His providers from that office did not do so (nor did any other provider). The only opinion

19

evidence in the record to contradict the consulting physicians' opinions is Plaintiff's "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment," which Plaintiff personally filled out with his own opinions about the limitations of "my patient," giving his own "diagnosis of the patient's symptoms and test results," rating "the patient's credibility with regards to claims of pain" as "very credible," and signing his name beneath the "Health Care Provider Signature." AR 2321-2332. At the Appeals Council level in June 2018, Plaintiff amended the same document to reflect that he was a "medical professional" as a "holistic health practitioner," even though he testified during the hearing before the ALJ that his holistic health massage license has been out of date since 2012 or 2013. *See* AR 3-5, 1704. Plaintiff now relies on the same document on appeal to argue that, had the ALJ credited the statements in the form, the ALJ would have found Plaintiff disabled. ECF No. 22-1 at 22. But the ALJ gave clear reasons why he discounted Plaintiff's own statements concerning the intensity, persistence, and limiting effects of his symptoms as inconsistent with the medical evidence and other evidence of record, including by pointing to evidence from treatment records showing drug-seeking behaviors. AR 572, 574-75. Therefore, the ALJ's decision to discount Plaintiff's subjective analysis of his symptoms was supported by substantial evidence.

In sum, the RFC determination is reserved to the ALJ, and he did not commit legal error by evaluating medical and other record evidence independently of the consulting physicians to reach his RFC determination. Nor did the ALJ err by failing to develop the record further after granting only partial weight to the consulting physicians' opinions, based on his own evaluation of the record evidence as a whole. The ALJ's finding that Plaintiff's RFC should include greater limitations than those recommended by the consultative examiners based on the medical record is not equivalent to inserting his own medical opinion, is consistent with the governing law and regulations, and does not constitute reversible error.

In the alternative, even assuming *arguendo* that the ALJ erred by including greater limitations than those recommended by the uncontroverted medical opinions of the

consultative examiners, such an error would be harmless. Had the ALJ limited Plaintiff to sedentary work without the ambulation limitation of needing to use a walking stick, the ALJ would have necessarily still concluded that Plaintiff could perform his past relevant work at step four of the sequential evaluation and, alternatively, other jobs that exist in the national economy at step five. Indeed, adopting the consultative examiners' RFC recommendation of light work (rather than sedentary work) with postural limitations would result in a finding that Plaintiff is capable of performing even ***more*** jobs in the national economy, not fewer.[2] Therefore, even if the Court is inclined to agree that the ALJ erred by including physical limitations in Plaintiff's RFC beyond those recommended by the uncontroverted opinions of the consultative examiners, the undersigned recommends that the Court reject this claim of error on the basis that any such error was harmless.

### B. Plaintiff waived his Appointments Clause challenge

The undersigned further recommends that the Court reject Plaintiff's Appointments Clause challenge as untimely raised.

Appointments Clause challenges are nonjurisdictional and may be waived or forfeited if the claimant does not timely assert the challenge during the administrative proceedings. *Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018) *cert. denied sub nom. Kabani & Co. v. SEC*, 139 S. Ct. 2013 (2019); *Kathleen S. v. Saul*, No. 319CV00651JLSRNB, 2020 WL 353602, at *3 (S.D. Cal. Jan. 21, 2020), *report and recommendation adopted*, No. 19-CV-651 JLS (RNB), 2020 WL 2848150 (S.D. Cal. June 2, 2020). *See also Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 700 (10th Cir. 2018) ("Appointments Clause challenges are nonjurisdictional and may be waived or forfeited");

---

[2] Light work is more strenuous than sedentary work. Therefore, a limitation to sedentary work is generally more restrictive and involves greater physical limitations than a limitation to light work, precluding the ability to perform a greater number of jobs in the Dictionary of Occupational Titles. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

*Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 678 (6th Cir. 2018) ("[S]tructural constitutional challenges are not jurisdictional and thus are subject to ordinary principles of waiver and forfeiture") (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 893–94 (1991) (Scalia, J., concurring in part and concurring in the judgment) ("A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.")).

In *Lucia*, the Supreme Court held that a person "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." 138 S. Ct. at 2055. Since *Lucia* was decided, dozens of district courts and the Third and Tenth Circuit Courts of Appeals have addressed whether Social Security claimants must raise Appointments Clause challenges to the SSA ALJs during the administrative proceedings below, or else waive such challenges on appeal. *See Carr*, 961 F.3d 1267; *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). Although the two circuit courts to address the issue are split, the vast majority of district courts to decide this issue have found that plaintiffs who fail to raise their Appointments Clause challenges before the SSA ALJ thereby waive them. *See, e.g.*, *Kathleen S.*, 2020 WL 353602, at *4 (collecting cases from this Circuit and following their reasoning to reject Appointments Clause claims when the challenge was not made at the administrative level); *Dierker v. Berryhill*, No. 18CV145-CAB(MSB), 2019 WL 246429, at *1 (S.D. Cal. Jan. 16, 2019), *report and recommendation adopted*, No. 18CV145-CAB-MSB, 2019 WL 446231 (S.D. Cal. Feb. 5, 2019) (also finding waiver of Appointments Clause claims not raised at the administrative level); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2019 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019) (collecting cases from 23 districts for the proposition that "the vast majority of district courts across the country agree" that "failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level"). *See also* ECF No. 24 at 19 n.12 (collecting an additional 31 cases from district courts across the country finding the same, noting only four district courts—the Northern District of

Oklahoma, the Middle District of Pennsylvania, the Eastern District of Washington, and the District of Massachusetts—have uniformly found no forfeiture, and noting splits on this question in three other districts—the District of New Mexico, the Eastern District of North Carolina, and the Eastern District of Pennsylvania).[3]

In his Reply, Plaintiff attempts to distinguish several cases the Commissioner cites in his summary judgment motion involving findings of waiver of Appointments Clause challenges. *See* ECF No. 25 at 5-7 (distinguishing *United States v. LA Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795 (8th Cir. 2013); *Kabani*, 733 F. App'x at 919; *Intercollegiate Broad Sys. v. Copyright Royalty Bd.*, 574 F.3d 748, 755-56 (D.C. Cir. 2009) (per curiam); *In re DBC*, 545 F.3d 1373, 1378-81 (Fed. Cir. 2008); and *Jones Bros.*, 898 F.3d at 677). Based on the distinctions between the circumstances of those cases and the present case, Plaintiff contends that "none of the cases cited by Defendant actually apply to the circumstances at hand[,] as Plaintiff raised the issue in his initial briefing at the District Court rather than the reply or at the Circuit Court level[.]" ECF No. 25 at 7. Plaintiff emphasizes his position that the ALJ would not have the authority to determine that his own appointment was constitutional, and that SSA proceedings have their own standards distinguishing them from other types of administrative proceedings. *Id.* However, all of the cases distinguished by Plaintiff are cited by the Commissioner in his brief only in the preliminary discussion of Appointments Clause challenges generally. *See* ECF No. 24 at 14-16. Plaintiff does not refute that the 31 cases later cited by Defendant, or the 23 cases cited by the *Dewbre* court and incorporated by reference in Defendant's brief, directly address the question before the Court in this case—whether a plaintiff waives

---

[3] The decisions from the Northern District of Oklahoma and the District of New Mexico finding no forfeiture are no longer good law in light of the Tenth Circuit's decision in *Carr*, 961 F.3d at 1274-75. *See Willie Earl C. v. Saul*, No. 18-CV-272-FHM, 2019 WL 2613819 (N.D. Okla. June 26, 2019), *rev'd sub nom. Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020); *McCray v. Soc. Sec. Admin.*, 435 F. Supp. 3d 1186, 1192 (D.N.M. 2020).

an Appointments Clause challenge to SSA ALJs if he failed to raise the issue during his administrative hearing—and answered that question in the affirmative. *See id.* at 18-20.

Plaintiff's only response to the substantial weight of authority contrary to his argument is that, in an opinion adopting the minority position, the Eastern District of Pennsylvania noted that "most federal courts addressing the Appointments Clause challenges have ruled, often without explanation, a claimant forfeits his Appointments Clause challenge if he fails to raise it in administrative proceedings." *Culclasure v. Comm'r of Soc. Sec.*, 375 F. Supp. 3d 559, 563 (E.D. Pa. 2019). The *Culclasure* court disagreed with these other courts' application of *Lucia* to reach that conclusion, since the Supreme Court in *Lucia* found an Appointments Clause challenge timely when raised "before the SEC (but not the ALJ) and the Court of Appeals." *Id.* (citing *Lucia*, 138 S. Ct. at 2055). Then, the Supreme Court held in *Sims v. Apfel* that Social Security claimants who exhaust issues before the ALJ need not also exhaust issues before the Appeals Council in order to preserve them for judicial review. 530 U.S. 103, 112 (2000). Piecing these two holdings together, the *Culclasure* court reasoned, *Lucia* should not apply to find forfeiture of an Appointments Clause challenge that a claimant failed to raise before the ALJ *or* the Appeals Council, since *Lucia* did not require such a challenge to be raised before the ALJ to be timely, and *Sims* did not require such a challenge to be raised before the Appeals Council when it was raised before the ALJ.

Upon consideration of all relevant persuasive authority, the undersigned recommends the Court side with the great weight of authority on this issue and find Plaintiff's Appointments Clause challenge waived. Notably, the *Culclasure* court is not in the Ninth Circuit, whose precedent strongly counsels against the application of *Sims* urged by Plaintiff. Specifically, in *Meanel v. Apfel*, the Ninth Circuit held that "at least when [Social Security] claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." 172 F.3d 1111, 1115 (9th Cir. 1999). After the Supreme Court decided *Sims* the following year, holding that Social Security claimants need not raise issues before the SSA Appeals

24

1    Council to preserve them for judicial review, the Ninth Circuit had the opportunity to revisit
2    the *Meanel* holding in light of *Sims*. In *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017),
3    the Ninth Circuit explained that the Supreme Court had expressly limited the *Sims* ruling
4    by noting that "[w]hether a claimant must exhaust issues before the ALJ is not before us."
5    *Id.* at 1109 (quoting *Sims*, 530 U.S. at 107). Accordingly, the *Shaibi* court held that "[i]n
6    light of the Court's express limitation on its holding in *Sims*, we cannot say that that holding
7    is 'clearly irreconcilable' with our decision in *Meanel*, and *Meanel* therefore remains
8    binding on this court with respect to proceedings before an ALJ." 883 F.3d at 1109.

9        Because *Meanel* remains good law, the rule in this Circuit remains that a Social
10   Security claimant must raise all issues before the ALJ to preserve them on appeal. 172 F.3d
11   at 1115. This binding Ninth Circuit precedent counsels in favor of finding Plaintiff's
12   Appointments Clause challenge waived, because it was not raised before the ALJ. There
13   is, of course, a notable distinction between the present case and the rule from *Meanel*—
14   namely, Plaintiff was not represented by counsel in the proceedings below. However,
15   *Meanel* does not expressly create two different rules for represented and unrepresented
16   claimants. Rather, the court explained that the plaintiff's argument "that it would be unfair
17   to apply the waiver rule in her case because disability benefits hearings are non-adversarial
18   in nature. . . *might be more persuasive if Meanel had not been represented by counsel*."
19   172 F.3d at 1115 (emphasis added). But the Ninth Circuit has never decided whether
20   different waiver rules should apply to unrepresented and represented claimants. Upon
21   review of the relevant authorities, the undersigned concludes that Defendant has the better
22   argument on that question. Specifically, Defendant relies on Justice O'Connor's
23   concurrence in *Sims*, opining that "it would be unwise to adopt a rule that imposes different
24   issue exhaustion obligations depending on whether claimants are represented by counsel."
25   530 U.S. at 114 (O'Connor, J., concurring). The undersigned agrees.

26       Therefore, the undersigned recommends that the Court "follow the reasoning of
27   other district courts in this Circuit which have rejected Appointments Clause claims post
28   *Sims* when the challenge was not timely made at the administrative level." *Kathleen S.*,

2020 WL 353602, at *4 (citing *Samuels v. Comm'r of Soc. Sec.*, 2019 WL 4479534, at *5 (N.D. Cal. Sept. 18, 2019); *Camilli v. Berryhill*, 2019 WL 3412921, at *13 (N.D. Cal. July 29, 2019); *Morrow v. Berryhill*, 2019 WL 2009303, at *3-*4 (N.D. Cal. May 7, 2019); *Allen v. Berryhill*, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); *Delores A v. Berryhill*, 2019 WL 1330314, at *10 (C.D. Cal. Mar. 25, 2019); *Dierker*, 2019 WL 246429, at *3-*4; *Hugues v. Berryhill*, 2018 WL 3239835, at *2 n.2 (C.D. Cal. July 2, 2018)). The Court should thus deny Plaintiff's Appointments Clause challenge as untimely.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court:

(1) **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 22);

(2) **GRANT** Defendant's Cross-Motion for Summary Judgment (ECF No. 24); and

(3) **AFFIRM** the Commissioner's decision.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **July 31, 2020**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **August 7, 2020**.

**IT IS SO ORDERED.**

Dated:  July 17, 2020

Honorable Allison H. Goddard
United States Magistrate Judge

26